**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**LINDA GOULD,**

                                        **Plaintiff,**

        **vs.**                                         **1:19-CV-1454**
                                                        **(MAD/DJS)**

**MARCONI DEVELOPMENT GROUP, LLC;**
**YACINE NOURI; and REDA TADJER,**

                                        **Defendants.**
────────────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

**SMITH HOKE, PLLC**                    **JOHN J. HOKE, ESQ.**
16 Wade Road                            **MEREDITH A. MORIARTY, ESQ.**
Latham, New York 12110
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On November 22, 2019, Plaintiff commenced this action claims under the Fair Labor

Standards Act ("FLSA"), the New York State Labor Law ("NYLL"), breach of contract, and

unjust enrichment.  *See* Dkt. No. 1.  After all Defendants failed to answer or otherwise respond to

the complaint, on March 13, 2020, Plaintiff submitted a request for the Clerk to enter default,

which was entered that same day.  *See* Dkt. Nos. 12 & 13.  Currently before the Court are

Plaintiff's motions for default judgment.  *See* Dkt. Nos. 14 & 15.

**II. BACKGROUND**

Plaintiff Linda Gould is an individual domiciled in Saratoga County, State of New York.

*See* Dkt. No. 1 at ¶ 1.  Defendant Marconi Development Group, LLC, is a Limited Liability

Company organized and headquartered in Massachusetts. *See id.* at ¶ 2. Defendant Marconi is registered to do business with the New York Secretary of State and does business within the State of New York. *See id.* at ¶ 3. Upon information and belief, Defendant Marconi manages the development, building, and servicing of cellular towers for mobile and wireless carriers. *See id.* at ¶ 4. Upon information and belief, Defendants Yacine Nouri and Reda Tadjer are individuals domiciled in Massachusetts, and are mangers and the only members of Marconi. *See id.* at ¶¶ 5-6, 10.

In November 2018, Plaintiff was hired as an Account Manager for Defendant Marconi. *See id.* at ¶ 16. Defendant Nouri and Tadjer were both employers of Plaintiff. *See id.* at ¶ 17. They both had the power to hire and fire her, exercised operational control, directed Plaintiff, and dictated the terms and conditions of her employment. *See id.* Plaintiff worked exclusively in New York with the knowledge and consent of Defendants. *See id.* at ¶ 18.

Plaintiff worked from her home in New York, making phone calls to cellular providers such as Sprint and Nokia. *See id.* at ¶ 19. Plaintiff would inform them about Defendant Marconi's services, including the construction and management of cellular towers, solicit business, negotiate the terms of agreements, finalize contracts, and serve as a contact for her customers. *See id.*

Plaintiff was given a written employment agreement, which stated that she would be given an annual salary of $72,000, paid on a bi-weekly schedule, or $2,769.23 per pay period. *See id.* at ¶ 20. The employment agreement also specified that Plaintiff would be given a 3% commission on all gross revenue for all wireless services generated. *See id.* at ¶ 21. The employment agreement included a term that Plaintiff would receive health insurance through her employer. *See id.* at ¶ 22.

2

In her complaint, Plaintiff claims that she was not paid for the pay periods ending February 28, March 15, March 31, April 15, April 30, June 30, and July 15.  *See id.* at ¶ 23.  Plaintiff complained to Defendant Nouri and Tadjer each time that she was not paid.  *See id.* at ¶ 24. Defendant Nouri and Tadjer assured her that she would eventually be compensated, and urged her to continue working.  *See id.* at ¶ 25.  In order to pay for her living expenses during the times she was not paid, Plaintiff withdrew money from her retirement account, and was charged a 15% penalty for each withdrawal.  *See id.* at ¶ 26.

Plaintiff claims that she was successful in generating business for Defendant Marconi, including over 30 sites for MiMo Upgrades and 43 sites for the 3Mhz Project.  *See id.* at ¶ 27. This business generated more than one million dollars in revenue for Defendant Marconi.  *See id.* at ¶ 28.

Plaintiff was not paid any commissions for the gross revenue she generated for Defendant Marconi, as promised in her employment agreement.  *See id.* at ¶ 29.  Additionally, Plaintiff did not receive any health insurance benefits and the company did not reimburse her for the $299 per month that she personally paid for premiums for basic insurance that she was forced to obtain on her own.  *See id.* at ¶ 30.

Plaintiff was terminated on July 16, 2019, without being paid for the pay periods listed above, or for any of her earned commissions.  *See id.* at ¶ 31.  Plaintiff claims that, since her termination, she has been unable to find another job because "the employment agreement includes an overly broad and burdensome non-compete clause."  *Id.* at ¶ 32.

In her first cause of action, Plaintiff asserts violations of the FLSA for the failure to pay her salary for the weeks identified above.  *See* Dkt. No. 1 at ¶¶ 33-37.  In her second cause of action, Plaintiff seeks damages under Sections 191(1)(c) and 198(1-a) of the NYLL for both her

unpaid salary and commissions, reasonable attorneys' fees, prejudgment interest, and liquidated damages equal to 100% of the total of the amount of wages found to be due. *See id.* at ¶¶ 38-48. In her third cause of action, Plaintiff claims that she is entitled to double damages on the unpaid commissions, reasonable attorneys' fees, court costs, and disbursements under Section 191-c of the NYLL. *See id.* at ¶¶ 49-54. In her fourth cause of action, Plaintiff claims that Defendants breached her contract by failing to pay her salary, commissions, and refusing to enroll her in Defendant Marconi's health insurance plan. *See id.* at ¶¶ 55-62. Finally, in her fifth cause of action, Plaintiff claims that Defendants were unjustly enriched when they failed to pay her salary and commissions. *See id.* at ¶¶ 63-68.

### III. DISCUSSION

**A.     Standard of Review**

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that default judgment is an extreme remedy, and therefore should be entered only as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). Although the Second Circuit has recognized the "push on a trial court to dispose of cases

that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that district courts must balance that interest with the responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party.  *Id.* Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default.  *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing defendants on notice of the relief sought, *see* Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *Enron Oil Corp.*, 10 F.3d at 95-96; *cf. King v. STL Consulting, LLC*, No. 05 CV 2719, 2006 WL 3335115, *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved — the more money involved, the less justification for entering default judgment.  *See Hirsch v. Innovation Int'l, Inc.*, No. 91 CV 4130, 1992 WL 316143, *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant." *Pacific M. Int'l*

*Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing their entitlement to recovery. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Upon entry of default, the defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages. *See id.*; *see also Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09 CV 5558, 2013 WL 5329254, *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability on each cause of action asserted. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In determining whether the plaintiff has met that burden, however, the Court draws all "reasonable inferences from the evidence offered" in the plaintiff's favor. *Id.* (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating each defendant's liability, the plaintiff must also establish his or her entitlement to damages to a "reasonable certainty." *Gunawan v. Sushi Sake Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). Although "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), *aff'd*, 873 F.2d 38 (2d Cir. 1989). In the context of a motion for default judgment to recover damages for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan*, 897 F. Supp. 2d at 83-84.

**B.      Service of Process**

Personal jurisdiction is a necessary prerequisite to entry of a default judgment. If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978); *see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (explaining that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effected in order to subject a defendant to the court's jurisdiction. *See* Fed. R. Civ. P. 4. Thus, it is well established that a failure to demonstrate that the summons and complaint were properly served on a defendant bars the entry of a default judgment. *See, e.g.*, *Orellana v. World Courier, Inc.*, No. 09 CV 576, 2010 WL 3861002, *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom the plaintiff had not adequately proved service); *Cowder v. Administration for Children & Families*, No. 09 CV 628, 2010 WL 723440, *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where service had not been properly effected); *Llaviganay v. Cipriani 110 LLC*, No. 09 CV 737, 2009 WL 1044606, *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment).

Rule 4(e)(1) provides, however, that a party may effect service by "following state law ... [of] the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Thus, in this case, service may also be deemed proper if Plaintiff has complied with New York law. Here, Defendants have not indicated any intention to waive service; thus, the issue is whether all necessary documents have been served in compliance with the requirements of Rule 4.

The technical requirements of Rule 4 notwithstanding, courts have recognized that the fundamental purpose of service is to give defendants notice of the claims against them; due process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DPWN Holdings (USA), Inc. v. United Air Lines*, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). At its core, this standard is one of reasonableness. *See id.* Thus, courts will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the relevant documents. *See, e.g.*, *Burda Media, Inc. v. Blumenberg*, No. 97 CV 7167, 2004 WL 1110419, *6-7 (S.D.N.Y. May 18, 2004).

In the present matter, Plaintiff properly effected service on all three Defendants. Specifically, Plaintiff served Defendant Marconi on January 9, 2020, by personally serving the Business Document Specialist at the New York Secretary of State. *See* Dkt. No. 8. Since Defendant Marconi is a corporation registered to do business in New York, this constitutes proper service. *See* N.Y. Bus. Corp. Law § 306(b)(1). Plaintiff properly served Defendant Nouri on December 13, 2019, by serving a copy of the summons and complaint on Defendant Nouri's father, at Defendant Nouri's home and completing service by mailing all relevant documents to the same address. *See* N.Y. C.P.L.R. § 302(2) (holding that service may be made "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by ... mailing the summons to the person to be served at his or her last known residence"). As to Defendant Tadjer, Plaintiff properly completed service by affixing the summons and complaint to the door of Defendant Tadjer's home, and then by mailing the same documents to the same address. *See* N.Y. C.P.L.R. § 302(4).

As such, the Court finds that, based on the affidavits of the process server, service upon both the corporate and individual Defendants complied with New York State law and the Court may properly exercise personal jurisdiction over them.

## C.   Default Determination

The filings in this matter demonstrate that all Defendants were properly served.  It is evident that all Defendants failed to plead or otherwise defend, and the Clerk of the Court properly entered each party's default as he was required to do.  *See* Fed. R. Civ. P. 55(a) (providing that where a party fails to plead or otherwise defend, and that failure is demonstrated by affidavit or other showing, "the clerk must enter the party's default").  Furthermore, the Court has not been presented with any reasons to justify delaying resolution of this matter.  The Court therefore turns to the issues of liability and damages that must be addressed prior to entry of default judgment.  *See* Fed. R. Civ. P. 55(b)(2).

### *1. Liability Under the FLSA*

In her FLSA claim, Plaintiff alleges that Defendants failed to pay bi-weekly compensation of $2,769.23 for pay periods ending February 28, March 15, March 31, April 15, April 30, June 30, and July 15 in violation of the FLSA.  *See* Dkt. No. 1 at ¶¶ 36-37.

"The FLSA is best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (quoting *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996)).  "In enacting the FLSA, Congress intended 'to protect all covered workers from substandard wages and oppressive working hours.'" *Id.* (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)).  "'The substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum working hours, bear out its limited purposes.'" *Id.* (quoting

*Monahan*, 95 F.3d at 1267) (other citation omitted); *see also Lyon v. Whisman*, 45 F.3d 758, 764 (3d Cir. 1995).  "Thus, the Act requires payment of a minimum wage, 29 U.S.C. § 206(a), and limits the maximum working hours an employee may work without receiving overtime compensation, 29 U.S.C. § 207(a)." *Id.*  "Section 216(b) provides a cause of action for violations of these two provisions, permitting employees to seek damages, as relevant here, in 'the amount of their unpaid minimum wages' and (in appropriate circumstances) an equal amount of liquidated damages." *Id.* (quoting 29 U.S.C. § 216(b)).

Here, Plaintiff has failed to allege a plausible claim under the FLSA.  Plaintiff was a salaried employee making $2,769.23 bi-weekly, considerably more than the minimum wage. From the face of her complaint, it is clear that Plaintiff is not claiming violations of the FLSA's minimum wage rate or maximum hours provision.  Rather, she is seeking unpaid salary. However, it is well settled that the FLSA "'does not provide wage payment or collection procedures for an employee's usual or promised wages or commissions in excess of those [minimum and overtime wages] required by the FLSA.'"  *Gwaltney v. Barbour*, No. 1:15-cv-771, 2015 WL 5774799, *1 (M.D.N.C. Sept. 30, 2015) (quoting *Handy Reference Guide to the Fair Labor Standards Act*, at p. 1, http://www.dol.gov/whd/regs/compliance/wh1282.pdf) (other citations omitted); *see also* Fair Labor Standards Act of 1938, Ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201–219); *McMurray v. LRJ Rests., Inc.*, No. 4:10-CV-01435, 2011 WL 247906, *2 (D.S.C. Jan. 26, 2011) (holding that the FLSA did not preempt the plaintiff's claim for failure to pay salary raises); *Nimmons v. RBC Ins. Holdings (USA) Inc.*, No. 6:07-CV-2637, 2007 WL 4571179, *2 n.1 (D.S.C. Dec. 27, 2007) (holding that the plaintiff's claim against the defendant "for failure to pay accrued vacation pay [was] not preempted or otherwise foreclosed by the FLSA claim").  Notably, Plaintiff does not allege that she was paid less than minimum wage

or that she was not paid overtime as provided for under Sections 206 and 207 of the FLSA. Therefore, the Complaint fails to state a valid FLSA claim.

Accordingly, the Court finds that Plaintiff has failed to allege a plausible claim under the FLSA and, therefore, denies her motion for default judgment as to this claim.

### 2. Subject Matter Jurisdiction over Remaining Claims

Having dismissed Plaintiff's only claim based on federal law, the Court must determine whether it has subject matter jurisdiction over the remaining claims before reaching the merits of those claims.  In her complaint, Plaintiff claims that the Court has subject matter jurisdiction over this matter based on "federal question jurisdiction, supplemental jurisdiction over the state law claims, and diversity between the parties."  Dkt. No. 1 at ¶ 7.  Having dismissed the only claim conferring federal question jurisdiction at such an early stage, it would be inappropriate to exercise supplemental jurisdiction over the remaining state law causes of action.  As such, the only remaining basis to find subject matter jurisdiction is based on diversity jurisdiction.

Federal subject matter jurisdiction exists only when a "federal question" is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs are of diverse citizenship from all the defendants and the amount in controversy exceeds $75,000.  At any point in the litigation, where the district court determines that jurisdiction is lacking, the court must dismiss the complaint without regard to its merits.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed"); *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) ("[A]ny party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and if it does not, dismissal is mandatory").

Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a).

Here, the complaint sufficiently alleges that the parties are diverse.  Plaintiff is a citizen of New York, while Defendants Nouri and Tadjer are citizens of Massachusetts.  *See* Dkt. No. 1 at ¶¶ 1, 5-6.  Additionally, Defendant Marconi is a Limited Liability Corporation organized and headquartered in Massachusetts.  *See id.* at ¶ 2.  As such, the only issue is whether the complaint sufficiently states an amount in controversy in excess of $75,000.

For the purpose of determining the amount in controversy pursuant to 28 U.S.C. § 1332(a), the amount that the plaintiff alleges in the complaint controls if the claim is apparently made in good faith.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).  A plaintiff must establish "to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).  While the Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999), a court must dismiss the case for want of subject matter jurisdiction if, "'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or ... that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction.'" *Tongkook*, 14 F.3d at 784 (quoting *St. Paul*, 303 U.S. at 288-89).  Although "[t]he amount in controversy is determined at the time the action is commenced," a subsequent discovery that the true amount in controversy is below the minimum

statutory jurisdictional amount requires dismissal for lack of subject matter jurisdiction.  *Id.* at 784, 786.

   In the present matter, Plaintiff alleges that she was not paid her salary of $2,769.23 for the pay periods of February 28, March 15, March 31, April 15, April 30, June 30, and July 15, for a total of $19,384.61.  *See* Dkt. No. 1 at ¶¶ 36, 41.  Additionally, because Plaintiff has brought her claims under the NYLL, she is entitled to up to 100% of the past due wages in liquidated damages, bringing the total to $38,769.22.  Since liquidated damages are recoverable by statute, the Court may consider them in determining whether Plaintiff has satisfied the amount in controversy requirement.  *See* N.Y. Lab. Law § 198(1-a); *see also Sheldon v. Khanal*, No. 08-cv-3676, 2011 WL 3876970, *7 (E.D.N.Y. Aug. 31, 2011) (holding that attorneys' fees and liquidated damages may be properly included in determining the amount in controversy only if "'they are recoverable as a matter of right' pursuant to a statute or contract") (quotation omitted).  Additionally, Plaintiff claims that, under the term of her employment agreement, she was entitled to a 3% commission on all gross revenue for all wireless services generated.  *See* Dkt. No. 1 at ¶ 21.  Plaintiff claims that she generated gross revenues of more than $1,000,000, for which she is owed commissions.  *See id.* at ¶¶ 28-29.  As such, Plaintiff's complaint claims base commissions owed in excess of $30,000 which, pursuant to Section 191-c of the NYLL will be doubled.  *See* N.Y. Lab. Law § 191-c(3) ("A principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages").

   Based on the foregoing, the Court finds that Plaintiff's complaint plausibly alleges damages in excess of $75,000.

   ***3. NYLL § 191(1)(c)***

In her second cause of action, Plaintiff alleges that Defendants violated Section 191(1)(c) of the NYLL in failing to pay her salary for the seven-pay periods identified above and in failing to pay her the commissions she earned. *See* Dkt. No. 1 at ¶¶ 38-48.

Article 6 of the New York State Labor Law "regulates the payment of wages by employers." *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 614 (2008); N.Y. Lab. Law § 190 *et seq.* "In order to prevail on a claim under Article 6, 'a plaintiff must first demonstrate that he or she is an employee entitled to its protections.'" *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (quotation and other citations omitted). Section 191 sets forth the requirements governing an employer's wage payments to various subcategories of employees, including "commissioned salespersons." N.Y. Lab. Law § 190(6). Section 190(6) defines a "commissioned salesperson" as any "employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions." N.Y. Lab. Law § 190(6). The statutory definition also expressly excludes any "employee whose principal activity is of a supervisory, managerial, executive or administrative nature." Id.

Here, the complaint makes clear that Plaintiff falls within the definition of "commissioned salesperson." Her job responsibilities included informing Defendants' customers about "[Defendant] Marconi's services, including the construction and management of cellular towers, solicit business, negotiate the terms of agreements, finalize contracts, and serve as a contact for her customers." Dkt. No. 1 at ¶ 19. For these services, she was paid a base salary and a 3% commission on all gross revenue for the wireless services she generated. *See id.* at ¶¶ 20-21. Based on these facts, the Court finds that the complaint plausibly alleges that Plaintiff was a commissioned salesperson as defined by the NYLL.

14

Section 191(1)(c) provides as follows:

> A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned; provided, however, that if monthly or more frequent payment of wages, salary, drawing accounts or commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan.

N.Y. Lab. Law § 191(1)(c).  Additionally, this provision provides that "[t]he employer shall furnish a commission salesperson, upon written request, a statement of earnings paid or due and unpaid."  *Id.*  "If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section."  N.Y. Lab. Law § 191(3).  Finally, pursuant to Section 198(1-a), a successful plaintiff is entitled to "all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due[.]" N.Y. Lab. Law § 198(1-a).

Here, Plaintiff's complaint plausibly alleges that her employment contract required that she be paid her salary no less than semi-monthly, and that she never received this salary for the seven pay periods identified above. *See* Dkt. No. 1 at ¶¶ 40-41.  Additionally, Plaintiff states that she was owed a 3% commission on gross revenues of more than $1,000,000 that she generated for Defendant Marconi, which Defendants also failed to pay. *See id.* at ¶¶ 42-44.  Finally, Plaintiff claims that she requested in writing a statement of earnings from Defendants, which they failed to

provide. *See id.* at ¶¶ 45-46.  Based on these allegations, the Court finds that Plaintiff has plausibly alleged that Defendants violated Section 191 of the NYLL.[1]

Finally, the Court must determine whether each named Defendant is an "employer" as defined by the NYLL.  Section 190(3) broadly defines an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business, or service." N.Y. Lab. Law § 190(3).  In analyzing whether a person is an employer, courts look to the "economic reality" test set forth in *Herman v. RSR Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  *See Chung v. New Silver Palace Restaurants, Inc.*, 272 F. Supp. 2d 314, 319 n.6 (S.D.N.Y. 2003) (observing that the test for determining whether a person is an employer under Article 6 is the same test "set forth in *Herman* for analyzing employer status under the Fair Labor Standards Act").  The "economic reality" test looks to whether the alleged employer: (1) "had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." *Herman*, 172 F.3d at 139.  "No one of the four factors is dispositive," and the question of employer status turns upon "the totality of the circumstances." *Id.*  "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic realities' presented by the facts of each case." *Id.* (citations omitted).

Here, Plaintiff has sufficiently alleged that all three named Defendants were her employers within the meaning of the NYLL.  According to the complaint, Defendants Nouri and Tadjer are the only members of Defendant Marconi Development Group, LLC, that both ran the business as

---

[1] *See Goldberg v. Jacquet*, 667 Fed. Appx. 313, 314 n.1 (2d Cir. 2016) (noting that the "[w]holesale withholding of wages is covered by NYLL § 191"); *see also Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-cv-6469, 2018 WL 5456654, *13 (E.D.N.Y. Sept. 8, 2018) (citing cases).

"managers," and that they were parties to her employment agreement, which necessarily set the terms of her employment. *See Flannigan v. Vulcan Power Group, LLC*, 642 Fed. Appx. 46, 52 (2d Cir. 2016).

Based on the foregoing, the Court finds that Plaintiff has established that she is entitled to judgment in her favor as to liability on her claim under Section 191 of NYLL against all named Defendants. *See Keun–Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that individual and corporate employer defendants are jointly and severally liability for any damages awarded).

### 4. NYLL § 191-c

Plaintiff has also brought a claim under Section 191-c of the NYLL. *See* Dkt. No. 1 at ¶¶ 49-54.

New York Labor Law § 191-b protects "sales representatives" in their dealings with their principals, and sets forth the requirements for payment of commissions. Section 191-c provides for double damages, in addition to fees and costs, in the event of a violation of Section 191-b. However, both provisions must be read in light of Section 191-a, which defines the term "sales representative."

According to Section 191-a, a "sales representative" is "a person or entity who solicits orders in New York state and is not covered by [Sections 190(6) and 191(1)(c), which protect employees who earn commissions as part of their salary] because he or she is an independent contractor." N.Y. Lab. Law § 191-a(d). In other words, salaried employees who receive commissions are protected under Section 191(1)(c), while independent contractors are covered by Sections 191-a through 191-c.

Here, Plaintiff's complaint makes clear that she is not an independent contractor. Plaintiff received a fixed salary and benefits in addition to her 3% commission on gross revenue generated, and was employed solely as an account manager/salesperson. Accordingly, the Court must deny Plaintiff's motion for default judgment as to Plaintiff's claim under Section 191-c of the NYLL. *See Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 369-70 (S.D.N.Y. 2006) (holding that the plaintiff who "received a fixed salary and benefits in addition to her 10% commission, and was employed solely as a salesperson and project manager" was not a "sales representative" under the NYLL and could not "claim the protections of § 191-b or § 191-c").

### 5. *Breach of Contract*

To make out a breach of contract claim against a defendant under New York law a plaintiff must show: "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by [the] defendant; and (4) damages to the plaintiff caused by [the] defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).

Here, Plaintiff has sufficiently alleged all required elements of her breach of contract claim. Plaintiff has set forth the terms of the agreement with sufficient specificity, including her salary, commission rate, payment of benefits, and her obligations under the contract. Further, Plaintiff alleges that she performed her obligations and that Defendants breached the agreement when they failed to pay the compensation due. These allegations are sufficient to state a plausible breach of contract claim. *See Wilk v. VIP Health Care Servs., Inc.*, No. 10 Civ. 5530, 2012 WL 560738, *3 (E.D.N.Y. Feb. 21, 2012).

Accordingly, the Court finds that Plaintiff is entitled to default judgment as to liability on her breach of contract claim.

### 6. Unjust Enrichment

In her fifth and final cause of action, Plaintiff brings a claim for unjust enrichment. *See* Dkt. No. 1 at ¶¶ 63-68.

"[T]o succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). Where, as here, however, the "matter is controlled by contract" and the claim for unjust enrichment seeks the same relief as is sought for breach of contract, the unjust enrichment claim is properly dismissed as duplicative. *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (citation omitted). "[C]laims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (citation and quotation marks omitted).

Here, Plaintiff's unjust enrichment claim is duplicative of her claim of breach of contract: it arises from the same facts and seeks the same relief. *Compare* Dkt. No. 1 at ¶¶ 55-62, *with id.* at ¶¶ 63-68. Accordingly, Plaintiff's motion for default judgment as to her unjust enrichment claim is denied and the claim is dismissed as duplicative of the breach of contract claim. *See LG Capital Funding, LLC v. Ubiquity, Inc.*, No. 16-cv-3102, 2017 WL 3173016, *3 (E.D.N.Y. May 12, 2017) (citing cases dismissing unjust enrichment claims as duplicative of breach of contract claims).

### D.    Damages

Having found that the complaint establishes Defendants' liability as to the NYLL and breach of contract causes of action, the Court will now address whether Plaintiff's motion is sufficient to award damages without a hearing or additional briefing.  While the allegations of a complaint pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not.  *See Greyhound Exhibitgroup*, 973 F.2d at 158.  Rather, a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).  A court may make this determination based upon evidence presented at a hearing, but a hearing is not required.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  No hearing is necessary, for example, where, based "upon a review of detailed affidavits and documentary evidence," the court is assured that there is an adequate basis for the damages sought. *Continental Casualty Co. v. Contest Promotions NY, LLC*, No. 15-cv-501, 2016 WL 1255726, *6 (E.D.N.Y. Mar. 28, 2016) (citation omitted); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 Fed. Appx. 44, 45 (2d Cir. 2015) (observing that the district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers").

In the present matter, the Court finds that Plaintiff has failed to provide the Court with the necessary evidence to support an award of damages at this time.  Plaintiff's motions are supported only by an attorney affirmation, unaccompanied by any competent evidence or an affidavit from an individual with personal knowledge of the relevant facts, *i.e.*, Plaintiff.  As such, Plaintiff's request for damages is denied without prejudice.  In any renewed application, Plaintiff shall

provide the Court with detailed affidavits setting forth the basis of the damages requested, as well as any relevant documentary evidence.[2]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiff's motions for default judgment (Dkt. Nos. 14 & 15) are **GRANTED as to liability** and **DENIED as to damages**; and the Court further

**ORDERS** that Plaintiff shall submit a supplemental memorandum, accompanied by an affidavit and evidence substantiating her claimed damages, as set forth above, within **THIRTY (30) DAYS** from the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 28, 2020
    Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**

---

[2] The Court also notes that Plaintiff has sought attorneys' fees in this matter. In her renewed application for damages, Plaintiff should include her request for attorneys' fees so as to avoid the necessity of revisiting this issue in a later submission. Any request for attorneys' fees must include detailed billing statements and any relevant information to justify the hourly rate sought.